# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**ANN MARIE DIETRICH,**

        **Plaintiff,**

**-vs-**                                             **Case No. 6:10-cv-1898-Orl-22DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's applications for Social Security Disability Insurance benefits and Supplemental Security Income. For the reasons set forth herein, it is **respectfully recommended** that the decision of the Commissioner be **REVERSED and REMANDED**.

## Procedural History

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on September 5, 2006, alleging an onset date of November 14, 2005 (R. 165-67, 197). The application was denied initially and upon reconsideration (R. 88, 90). On November 5, 2008, Plaintiff filed an application for Supplemental Security Income (R. 180-188). She requested and received a hearing on her applications before an Administrative Law Judge ("ALJ") (R. 62-86, 99), and, on September 11, 2009, the ALJ issued an unfavorable decision (R. 9-23). The Appeals Council denied Plaintiff's request for review of the hearing decision (R. 4-8), making the ALJ's decision the final decision of the Commissioner. The instant action followed (Doc. No. 1) and the matter has been fully briefed and referred to the undersigned for issuance of a Report and Recommendation.

## Nature of Claimed Disability

Plaintiff alleges disability due to epilepsy and "uncontrolled seizures," arthritis, and a "crippled left foot" (R. 201).

*Summary of Evidence before the ALJ*

At the time of the ALJ's decision, Plaintiff was 43 years old, with a general equivalency diploma (GED) and past relevant work as a receptionist and administrative clerk (R. 65, 165).

Plaintiff's pertinent medical history is set forth in detail in the ALJ's decision and, in the interests of privacy and brevity, will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes the opinions of non-examining state agency consultants, the forms and reports completed by Plaintiff and her husband with respect to this claim, as well as the testimony at the administrative hearing of Plaintiff and a Vocational Expert. By way of summary, the ALJ found that Plaintiff had severe impairments of seizures and congenital bilateral club feet (R. 16), and the record supports this uncontested finding. The ALJ determined that Plaintiff's impairments did not meet or medically equal one of the impairments listed in the Listing of Impairments (the Listings), 20 C.F.R. pt. 404, subpt. P, app. 1 (R. 16), and determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. 404.1567(b) and 416.967(b), "except the claimant must have employment that accommodates seizure precautions" (R. 16). The ALJ then determined that Plaintiff that could perform her past relevant work, and was therefore not disabled (R. 20). Relying on the Medical-Vocational Rules and the testimony of the Vocational Expert, the ALJ made additional findings that there were other jobs that existed in the national economy that Plaintiff could perform given her age, education, work experience and RFC, and therefore she was not disabled (R. 21-23).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises several inter-related issues for review, claiming: 1) the ALJ erred in discrediting the opinion of the treating physician; 2) the ALJ's finding that Plaintiff did not meet a listed impairment is not adequately supported; and 3) the ALJ's finding that Plaintiff has been non-compliant with her medication is not supported by substantial evidence.

The Court evaluates the issues in the context of the five step sequential evaluation used by the Commissioner. The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Applied here, the ALJ found in Plaintiff's favor at steps one and two, but determined that Plaintiff's impairments did not meet or equal a listed impairment (step three), and found that Plaintiff could perform her past relevant work (step four), and could also perform other work that exists in the national economy (step five). Plaintiff's objections are directed to the ALJ's determination of the severity of her impairments and the resulting formulation of her RFC at step three and beyond.

*Treating Physician*

Plaintiff contends that remand is warranted for failure to properly evaluate the medical opinions of the treating physician in formulating Plaintiff's RFC and determining whether Plaintiff's impairments meet or equal a listing.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440

(11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

The ALJ must "state with particularity the weight he gave different medical opinions and the reasons therefore." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986). As a general rule, a treating physician's opinion is normally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Commissioner of Social Security*, 631

F.3d 1176, 1178–79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, *supra*). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178–79 (*quoting Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir.1981)).

Applied here, Plaintiff has been treated for a generalized seizure disorder by neurologist Vicente Trapani, MD., since April 2002, well prior to her onset date (R. 16, 251-53). The early treatment notes reflect that she was taking Neurontin for her seizures but that alone was not effective. On June 5, 2002, Dr. Trapani prescribed Dilantin to work in conjunction with the Neurontin (R. 253). In February of 2005, still pre-onset, her Dilantin level was 17.8 (R. 260), within the normal range of 10-20 (R. 158).

On May 25, 2005, Plaintiff called Dr. Trapani and reported experiencing sensation of aura (R. 292). She saw Dr. Trapani on May 26, 2005, and reported having a few seizures per week (R. 260-61). She also had some drooling and episodes of dizziness and light-headedness. She complained of having at least ten spells a week of light-headedness and deja vu feeling. *Id.* Dr. Trapani added a new medication (Keppra) and continued Dilantin, noting: "She may have been taking too much Dilantin . . . I will add Keppra because in spite of being on 500 mg of Dilantin she continues to have the blackout spells." (R. 261). On July 5, 2005, Plaintiff called Dr. Trapani's office and reported having had at least ten seizures since the past Friday. She was having more hand tingling and

numbness, lasting all day (R. 289). A noted dated July 6, 2005 indicates that Plaintiff "has not been taking her meds." (R. 288).

Following the alleged onset date of November 14, 2005, the record reveals an ongoing struggle to adjust Plaintiff's medications to eliminate her seizures. On June 5, 2006,[1] Plaintiff called Dr. Trapani complaining of numbness in her left side (R. 285). She reported that had recently suffered a seizure and was treated in the Emergency Room (R. 264-65). She reported that she had been off her medication for a week, and her Dilantin level was low – at 6. *Id.*

Shortly thereafter, Plaintiff saw the doctor on June 19, 2006, complaining of dizziness and numbness and tingling sensation in the feet (R. 254). She was averaging one seizure a week and associated blackout spells. Sensory examination demonstrated slightly decreased temperature in the feet and no reflexes were elicited in the ankles. Her gait was slightly ataxic. Dr. Trapani noted that the dizziness could be due to an *overdose* of Dilantin (R. 255). It was noted that the claimant had been taking Dilantin for over 15 years and it was possible that the Dilantin had caused neuropathy. *Id.* Laboratory work-up from June 21, 2006 showed a high Dilantin level at 38 (R. 302). Laboratory tests from June 30, 2006, however, showed *low* Dilantin level at 6 (R. 276). Results from July 5, 2006 and July 18, 2006 were normal at 10 (R. 276).

On August 22, 2006, her Dilantin level was at 9. *Id.* She began experiencing an increase in her seizures and Dr. Trapani increased her Dilantin dosage (R. 281). Despite the increase, she had four seizures on September 5, 2006 (R. 279, 280). Her Dilantin was increased again and her Dilantin level was normal, at 16, on September 9, 2006 (R. 276, 278-280). As Plaintiff suffered a skin reaction due to the increased medication, Dr. Trapani adjusted her medications again on September 13, 2006 (R. 278).

---

[1]This date may be in error as the date of the emergency room visit referenced is June 30, 2006 (R. 264-65).

On August 21, 2007, Plaintiff was admitted to the Bert Fish Medical Center, for recurring seizures (R. 334). She had experienced a seizure and fell, causing an injury to her wrist. Her Dilantin level was at 9 (R. 335). On August 23, 2007, Ms. Dietrich saw Dr. Trapani for a follow-up appointment (R. 320). Dr. Trapani noted that she was "continuing to have breakthrough seizures" despite taking the medication (R. 320). Dr. Trapani increased her dosage of Keppra, however he noted a concern that she could not afford this medication as she "has limited income and she has been turned down by Social Security and it is unknown why that was done since she has intractable poor controlled seizure disorder." *Id.*

On September 27, 2007, Plaintiff was admitted to the Bert Fish Medical Center after she suffered an injury to her left foot while having a seizure (R. 323). Radiographs of the left foot showed subtalar arthrodesis with accelerated degenerative changes at the talonavicular joint with moderate sclerosis and osteophytosis (R. 329). The diagnosis was acute left foot contusion. *Id.* On October 9, 2007 the claimant was treated at Bert Fish Medical Center for a left foot crush injury (R. 136).[2]

Against this background, Dr. Trapani issued his opinions that, although Plaintiff is compliant with her medications, she continues to experience seizures and is unable to perform work (R. 350, 354-57). In a letter dated July 23, 2008, and in a Medical Provider's Statement prepared on December 16, 2008, the doctor opined that the claimant is unable to work as her seizure disorder cannot be medically controlled (R. 18). The ALJ summarized opinions set forth in a December 2008 Residual Functional Capacity questionnaire as follows:

---

[2] The record also includes other medical treatment for Plaintiff's foot injuries. On October 17, 2007, Plaintiff was examined by Scott I. Silas, M.D. and his impression was left foot contusion; residuals from previous triple arthrodesis, left foot; and advanced degenerative arthritis, medial cuneiform navicular joint, left foot (R. 351). Dr. Silas filled out a permanent parking permit for Ms. Dietrich at this appointment, finding that her foot condition "represents significant disability" and "the pathology in her left foot significantly limits her ability to walk long distances or stand for any prolonged period of time and will continue to be symptomatic into the future" (R. 352).

-8-

> In a Residual Functional Capacity Questionnaire, Dr. Trapani reported that the claimant has an intractable generalized seizure disorder. He noted that the claimant's typical seizures last minutes and the postictal manifestations last 1 to 4 hours. The doctor also noted that the claimant does not suffer any side effects from her seizure medication, and the doctor reported that the claimant requires constant supervision, she may not drive, but she may take the bus. The doctor opined that the claimant is incapable of even low stress jobs, as stress may trigger a seizure. The doctor also opined that the claimant is likely to be absent from work as a result of her impairment for more than four days per month.

(R. 19).

The ALJ accorded "little weight" to these opinions:

> because the medical evidence of record fails to confirm the subjective severity of the claimant's condition and the doctor's opinion is inconsistent with the treatment notes. Moreover, the doctor's opinion that the claimant is unable to work (Exhibit l2F) is a legal conclusion left to the Administrative Law Judge (20CFR § 404.1527 (e)(l) and Social Security Ruling 96-5p).

> In summation, the claimant's seizures may be the result of her noncompliance with the prescribed treatment rather than the ineffectiveness of the treatment itself. With continued treatment and anticonvulsant medication, the claimant's seizures are not expected to prevent her from working. The claimant's prescribed anticonvulsant medications manage the claimant's seizure impairment to a degree that permits sedentary and light work, with seizure precautions.

(R. 20).

**The proper legal standard**

Plaintiff contends that the ALJ applied the wrong legal standard in discrediting the physician's opinion because the medical evidence of record fails to confirm the "subjective severity" of the claimant's condition. When a claimant attempts to establish disability through his or her own testimony of subjective symptoms, the Eleventh Circuit follows a three-part test that requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged [symptom] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged [symptom]." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). While the Court

agrees that the "subjective severity" language used by the ALJ is ambiguous in this context, it does not find that the ALJ was requiring objective proof of the pain itself, as Plaintiff appears to contend.

### Compliance and Treatment Notes

Plaintiff fares better with her remaining arguments. At the heart of the ALJ's rejection of the treating physician's opinion is the ALJ's conclusion that Plaintiff was not compliant with her medications and, if she were compliant, she could work. Plaintiff contends that this finding is not supported by substantial evidence, noting her doctor's conclusion that she was compliant but still had "breakthrough" seizures and pointing to her testimony at hearing that she only missed her medications two or three times in the past 20 years, due to financial reasons (R. 72-73).

By contrast, the Commissioner cites the notations above where Plaintiff admitted to not taking her medications or where her Dilantin levels were lower than normal. According to the Commissioner, citing SSR 86-7, "[t]he predominant reason for low anticonvulsant blood levels is that the individual is not taking the drugs as prescribed." SSR 87-6 further provides "[u]nless convincing evidence is provided that subtherapeutic blood drug levels are due to abnormal absorption or metabolism, and the prescribed drug dosage is not itself inadequate, the conclusion should follow that the individual is not complying with the treatment regimen." (Brief at p. 8). As the record includes several examples of a low Dilantin level, Plaintiff "clearly" has been non-compliant, according to the Commissioner (Brief at p. 9).

While the Court finds substantial evidence of episodic non-compliance, it finds little evidence to conclude that the noncompliance was the cause of the seizures and no evidence, let alone substantial evidence, to conclude that: "The claimant's prescribed anticonvulsant medications manage the claimant's seizure impairment to a degree that permits sedentary and light work, with seizure precautions." (R. 20).

In *Lucas v. Sullivan,* 918 F. 2d 1567 (11th Cir. 1990), the appellate court addressed a similar situation where a claimant was occasionally non-compliant. In pertinent part, the court noted:

> The ALJ's finding that "there is evidence of intermittent noncompliance," R2-16, is clearly supported by substantial evidence in the record. As the ALJ noted, Ms. Lucas told her doctors on several occasions that she had not been taking the medications as prescribed. However, the ALJ's conclusion that her intermittent noncompliance is "a primary cause of [her] seizures," Id., is not supported by substantial evidence. The ALJ himself noted that there was no indication in the record as to whether the subtherapeutic drug levels were caused by individual idiosyncrasy in absorption or metabolism of the drugs. Although the record contains many clinical reports of her drug blood serum levels, it contains no objective findings regarding her absorption and metabolism of the drugs. Evidence in the record indicates that such diagnostic studies were needed to fully and fairly develop the record.

918 F.2d at 1572.

Here, the record contains evidence where Plaintiff's levels were low *and* evidence where her levels were too high. Indeed, on at least two occasions, her doctor treated Plaintiff for complications of too much Dilantin. In the course of just two months (June-August 2006) Plaintiff's levels ranged from 38 (high) to 6 (low) to 10 (normal). What the ALJ concludes is non-compliance is equally indicative of, as claimed by the treating physician, the lack of an ability to formulate the right dosage of medications to control the seizures without causing the neuropathy and other side effects Plaintiff experiences at higher levels. In fact, the notes of Dr. Trapani – a neurologist who has treated Plaintiff for many years – reflect the addition of Keppra precisely because, despite 15 years of Dilantin, Plaintiff continued to have "breakthrough" seizures. As in *Lucas*, absent objective findings regarding Plaintiff's absorption and metabolism of the drugs, a conclusion that the seizures are the result of non-compliance cannot be sustained on this record. As such, substantial evidence does not support the finding that Dr. Trapani's opinions were inconsistent with his treatment notes and does not support the ALJ's rationale for failing to credit the opinion of the treating physician. [3]

---

[3] The Court also finds, as noted by Plaintiff, that the treating physician's opinions were not "legal conclusions" reserved for the Commissioner. Under the standard set in *Winschel, supra*, opinions regarding the nature and severity of an
(continued...)

As such, the Court also finds merit in Plaintiff's objection to the implicit finding that her testimony regarding compliance was not credible. The record reflects that Plaintiff's seizures often cause great injury and distress to her. Plaintiff has injured her wrist, suffered a major injury to her (already injured) foot, burnt her hand on the stove (R. 71) and suffers urinary incontinence and other indignities. She has testified that Dilantin is "pretty cheap" but Keppra is "really expensive." (R. 72-73). In order to find noncompliance the ALJ would have to conclude that Plaintiff is willingly foregoing a cheap medication that could help control the undisputed seizures and resultant painful injuries she complains of. Substantial evidence does not support such a conclusion here.

**The finding at step three**

Although the above conclusions are dispositive, in the interests of completeness, the Court addresses Plaintiff's other contention. Plaintiff argues that the ALJ erred in finding that the record does not establish a listed impairment and that "[n]either the claimant nor his counsel has suggested or alleged facts which establish the existence of an impairment, either singly or in combination, which meets or medically equals any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Appendix 1)." (R. 16). Plaintiff has at least alleged facts which arguably apply to Listing 11.03, which provides:

> Epilepsy – nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.03.

---

[3](...continued)
impairment and what a claimant can and cannot do are medical judgments to be evaluated by the ALJ.

The Commissioner argues that the criteria in the Listings "can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment." 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00A. As this crucial issue of compliance requires further record development for the reasons set forth above, the Commissioner should also reconsider, upon the supplemented record on remand, whether Plaintiff has met or equaled a Listing.

## Conclusion

For the foregoing reasons, the Court finds that the decision of the Commissioner was not supported by substantial evidence and was not made in accordance with proper legal standards. As such, it is **respectfully recommended** that it be **REVERSED and REMANDED** for further record development and administrative proceedings, under sentence four of 42 U.S.C. 405(g). If adopted, the Clerk should be directed to enter judgment accordingly and close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 19, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy